UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RICHARD STEPNOSKY,

    Plaintiff,

v.

SILGAN HOLDINGS, INC., *et al.*,

    Defendants.

Case No. 21–cv–00319–KM–ESK

OPINION

**MCNULTY**, U.S.D.J.

**THIS MATTER** is before the Court on plaintiff Richard Stepnosky's motion to remand this case to the Superior Court of New Jersey, Middlesex County (State Court). ("Motion", DE 4.) The Motion also seeks an award of attorney's fees and costs pursuant to 28 U.S.C. §1447(c). Defendants Silgan Holdings, Inc. (Silgan),[1] Bryce Bedford, Mark Kwiatkowski, and Scott Garboski filed an opposition to the Motion. (DE 7.) Stepnosky filed a reply brief in further support of the Motion. (DE 8.)

For the following reasons, the Motion is **GRANTED** insofar as it seeks an order remanding the case to State court. The component of the motion that seeks attorney's fees and costs, however, is **DENIED**.

I.   BACKGROUND

This case stems from Silgan's alleged retaliatory discharge of Stepnosky for blowing the whistle on health and safety issues at Silgan's manufacturing plant. Silgan, "the largest provider of metal food packaging in the United States," operates a manufacturing facility in Edison, New

---

[1]     Silgan states that its correct name is Silgan Containers Manufacturing Corporation.

Jersey (Facility).² (DE 1-1 ¶ 1.) Stepnosky was employed with Silgan as a management trainee and production supervisor from October 14, 2019 to October 12, 2020, the date he was terminated. (*Id.* ¶¶ 6, 7, 63.)

According to the complaint, Stepnosky identified numerous safety issues at the Facility and reported them to Silgan's management. (*Id.* pp. 7, 8.) He believed the issues constituted violations of Occupational Safety and Health Administration (OSHA) regulations. (*Id.* ¶¶ 10–19.) Stepnosky was told not to "focus on" those issues and not to "ask so many questions." (*Id.* ¶¶ 21, 33.)

When Stepnosky continued to raise safety and health concerns, including questions over Silgan's compliance with the Centers for Disease Control and Prevention ("CDC") guidelines related to COVID-19, his plant supervisors became hostile and threatened to terminate his employment. (*Id.* ¶¶ 38–45, 50–56.) Stepnosky reported one incident of hostile treatment to a Silgan human resources representative, but Silgan took no action and the incident was never documented. (*Id.* ¶¶ 46–49.)

Stepnosky met with another representative on October 5, 2020 to advise that "he did not feel safe working in the … [F]acility because of [Silgan's] disregard for safety[.]" (*Id.* ¶¶ 57, 60.) The representative "questioned out loud whether [Stepnosky] was a good fit for Silgan." (*Id.* ¶ 58.) Stepnosky's employment was terminated on October 12, 2020. (*Id.* ¶ 63.)

## II. PROCEDURAL HISTORY

On December 7, 2020, Stepnosky filed the complaint in State Court, alleging he was subjected to a hostile work environment and terminated in

---

² Defendant Bryce Bedford was the plant manager at the Facility (DE 1-1 ¶ 2), defendant Mark Kwiatkowski was the plant superintendent at the Facility (*id.* ¶ 3), and defendant Scott Garboski was the assistant plant superintendent at the Facility (*id.* ¶ 4).

retaliation for blowing the whistle on various safety issues at the Facility. (*Id.* ¶¶ 64, 67.) The complaint asserts the following causes of action, all under state law: (1) violation of the New Jersey Conscientious Employee Protection Act (CEPA) for hostile work environment and wrongful discharge (count one); (2) a public policy wrongful discharge claim pursuant to *Pierce v. Ortho Pharm. Corp.* 84 N.J. 58 (1980) (count two); and (3) intentional infliction of emotional distress (count three). (*Id.* pp. 16, 22, 23.) Stepnosky alleges that he "reasonably believed" the conditions he reported constituted violations of federal and state laws, regulations, and public policy, and that his whistleblowing to Silgan's management constituted protected activity. (*Id.*)

Defendants filed a notice of removal on January 7, 2021. (DE 1.) The notice states that this Court has "original jurisdiction under … 28 U.S.C. § 1331 and § 1337" because "even though Plaintiff alleges only state law claims," federal issues are "necessarily raised, … actually disputed, … substantial, and … capable of resolution" in this Court under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005). (*Id.* ¶¶ 8, 9.) Defendants filed an answer to the complaint, along with a counterclaim against Stepnosky, on January 28, 2021. (DE 3.) The counterclaim asserts a cause of action for breach of the duty of loyalty.[3] (*Id.* p. 16.) Stepnosky has yet to answer, move, or otherwise respond to the counterclaim.

Defendants filed this Motion to remand on February 5, 2021. (DE 4.) The Motion is fully briefed. (ECF Nos. 7, 8.)

---

[3] The counterclaim alleges that Stepnosky missed a total of 43 days of work, failed to walk the Facility floor to supervise employees, ignored safety issues, searched for another job on company time, and sent e-mails to his girlfriend with "inappropriate content," including a YouTube video containing profane language. (DE 3 pp. 14–16.)

## III. PARTIES' ARGUMENTS

Stepnosky raises a number of arguments in support of the Motion. (ECF Nos. 4-1, 4-2). He contends the complaint does not raise any federal issues because he seeks no relief under federal law and is only alleging state law claims. (DE 4-1 pp.8, 9.) Stepnosky also submits that the complaint does not entail an analysis or construction of a federal statute or application of federal legal principles. (*Id.* p.22.) Furthermore, he argues that, since he need not prove that defendants actually violated any law or regulation in connection with his CEPA claim, "no federal issue is necessarily raised in [the] Complaint." (DE 4-2 p.4.)

Stepnosky points to decisions from this district, and other federal districts, where courts have found no federal issue actually raised where CEPA plaintiffs have sounded the alarm on violations of federal law. (*Id.* pp.8, 9.) Addressing the *Grable* test, Stepnosky also submits that no federal issue is actually disputed or substantial (DE 4-1 p.8; DE 4-2 p.4), and that consideration of the "federal-state balance" weighs in favor of remand (DE 4-2 p.6).

Furthermore, Stepnosky claims Defendants' removal to this Court was improper in the first instance insofar as the complaint alleges state law claims under CEPA and New Jersey common law only. (*Id.* p.8.) As such, he seeks attorney's fees and costs pursuant to 28 U.S.C. §1447(c) to the extent Defendants had no "objectively reasonable" belief that removal to this Court was proper. (*Id.* p.9.)

In opposition to the Motion, Defendants contend that "[p]laintiff['s complaint] raises substantial and disputed questions of federal law that confer federal jurisdiction over his state law claims." (DE 7 p.6.) They note that the complaint is "replete with numerous allegations … related to[] federal safety violations." (*Id.*) According to Defendants, Stepnosky's

"fundamental grievance" is that Silgan "systematically violated federal law, which, in turn, created an unsafe work environment." (*Id.* p. 7.)

Defendants also argue that these "serious allegations of impropriety [concerning federal regulations and guidelines] require resolution in the forum best equipped to resolve these distinctly federal issues." (*Id.*) They add that the exercise of federal jurisdiction here will not "disturb the balance of responsibility between federal and state courts ... Silgan's removal ... was proper[.]" (*Id.*) Defendants acknowledge that the complaint "alleges no express federal cause of action" and that "diversity of citizenship does not presently exist." (*Id.* p. 11.)

In his reply brief, Stepnosky disputes Defendants' contention that "complaints of multiple violations of federal law in a CEPA claim trigger[] federal subject matter jurisdiction" under *Grable*. (DE 8 p. 7.) Stepnosky reiterates that he "is not complaining [that] Defendants in fact or actually violated a federal law[.]" (*Id.* p. 10.)

## IV. REMOVAL AND REMAND: LEGAL STANDARDS

"[D]efendants may generally remove civil actions from state court to federal court so long as the district court would have had subject-matter jurisdiction had the case been originally filed before it." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014); *see also* 28 U.S.C. § 1441(a) (providing that "[e]xcept as ... provided by ... Congress, any civil action brought in a State court of which the district courts ... have original jurisdiction[] may be removed"). Federal courts "are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also* 28 U.S.C. § 1331 (providing that district courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States")

"Upon the removal of an action, a plaintiff may challenge such removal by moving to remand the case . . . to state court." *Rutgers, The State Univ. v. BioArray Sols., Ltd.*, No. 16-04183, 2017 WL 1395486 (D.N.J. Apr. 18, 2017) (citing 28 U.S.C. §1447). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c). "[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (citation omitted). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 292, 396 (3d Cir. 2004)). The Third Circuit has described that burden as a "heavy" one. *See Brown v. Jevic*, 575 F.3d 322, 325 (3d Cir. 2009).

"[A] defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law."[4] *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10 (1983). "Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint"). "Usually, federal jurisdiction is retained only when the plaintiff's right to relief relies on federal law, i.e., when the relief is based on

---

[4] "The removability of a legal matter is determined from the plaintiff's pleadings at the time of removal." *Costa v. Verizon N.J., Inc.*, 936 F. Supp. 2d 455, 458 (D.N.J. 2013) (citing *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 14 (1951)).

6

a federal cause of action." *JVC Ams. Corp. v. CSX Intermodal Inc.*, 292 F. Supp. 2d 586, 592 (D.N.J. 2003).

If "the action is not expressly authorized by federal law, does not require the construction of a federal statute and is not required by some distinctive policy of a federal statute to be determined by the application of federal legal principles, it does not arise under the laws of the United States even if federal law furnishes some necessary ingredient of the claim." *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974). Consequently, a complaint's "mere allusion" to federal law, or a "passing reference" to a federal statute, does not present a federal question that arises under federal law for purposes of determining subject matter jurisdiction. *Hunter v. Greenwood Tr. Co.*, 856 F.Supp. 207, 214 (D.N.J. 1992) (citing *Bacardi v. Bacardi Corp.*, 677 F.Supp. 253, 256 (D. Del. 1988)); *see also Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 913 (1986) ("the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction").

However, "[f]ederal jurisdiction may exist where the complaint alleges only state law claims if 'federal law completely preempts a state law claim or where a state law claim raises a substantial embedded federal issue that can be addressed by the federal courts without disturbing congressional intent.'" *Parrish v. The Arc of Morris Cnty., LLC*, 193 F. Supp. 3d 425, 430 (D.N.J. 2016) (citation omitted). This type of federal question jurisdiction is also known as "arising under" or "embedded" jurisdiction. *See MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 412 (3d Cir. 2015). Thus, even where no federal claims are asserted in the complaint, "causes of action under state law may nonetheless 'arise under' federal law for purposes of" 28 U.S.C. §1331 "if the four-pronged *Grable* test is met." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014).

Under *Grable*, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing congressionally approved balance of federal and judicial responsibilities." 545 U.S. at 314. "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313–14). Only a "special and small category" of cases will satisfy the *Grable* test. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

## V. DISCUSSION: REMAND

This matter will be remanded to State Court for lack of subject matter jurisdiction. Defendants' invitation to recognize the existence of embedded *Grable* jurisdiction under the circumstances presented here is rejected.

### A. No Federal Issue Necessarily Raised

The complaint does not necessarily raise a federal issue. "For a federal issue to be necessarily raised, 'vindication of a right under state law [must] necessarily turn[] on some construction of federal law.'" *Manning*, 772 F.3d at 163 (quoting *Franchise Tax Bd.*, 463 U.S. at 9). If "no federal issue has been necessarily raised," courts "need not decide whether the other three *Grable* requirements are met." *Id.*

Vindication of Stepnosky's CEPA claim will not necessarily turn on construction of federal law. In order to prevail on his CEPA claim, Stepnosky must demonstrate: (1) a reasonable belief that his employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he performed a "whistle-blowing" activity described in N.J. Stat. Ann. § 34:19-3c; (3) an adverse employment action was taken against him; and (4) a causal

8

connection between the whistle-blowing activity and the adverse action. *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003) (citing *Kolb v. Burns*, 320 N.J. Super. 467, 476 (App. Div. 1999)).

The merits of Stepnosky's lawsuit will depend on his *reasonable belief* that he was reporting a violation of federal regulations, not on whether those regulations were actually violated. *See Gerard v. Camden Cnty. Health Servs. Ctr.*, 348 N.J. Super. 516, 522 (App. Div.) ("CEPA does not require that the activity complained of ... be an actual violation of law or regulation, only that the employee 'reasonably believes' that to be the case."), *certif. denied*, 174 N.J. 40 (2002). Under that standard, even a report that turns out to be incorrect may nevertheless be protected under CEPA. Thus, the issue to be resolved is at least one step removed from, *e.g.,* adjudicating a claim directly based on a federal regulatory violation. An authoritative or binding construction of federal law will not be required to resolve Stepnosky's CEPA claim.

The facts of this matter resemble those in *Ruiz v. Woodland Park OBGYN, LLC*, No. 15-08300, 2016 WL 158522 (D.N.J. Jan. 13, 2016).[5] In *Ruiz*, the plaintiff brought a CEPA action against her former employer who terminated her for complaining that co-workers had violated the federal Health Insurance Portability and Accountability Act (HIPAA) by failing to safeguard plaintiff's confidential health information. *Id.* at *2. The *Ruiz* court rejected the argument that the complaint's reference to HIPAA "pose[d] a federal issue sufficient to confer federal question jurisdiction." *Id.* The court reasoned that "the CEPA issue ... is not even whether HIPAA was violated; it is whether [the plaintiff] reasonably believed HIPAA had

---

[5] *See also Salazar v. Maquet Cardiovascular*, No. 10-01166, 2010 WL 2400377, at *4 (D.N.J. June 10, 2010) (CEPA action wherein court, finding no jurisdiction under *Grable*, rejected "tenuous" proposition that interpretation of federal regulations would "most certainly come into play").

been violated when she complained." *Id.* at *3 (citing *Abella v. Seven Seven Corp. Grp.*, No. 13-05263, 2014 WL 220570, at *5 (D.N.J. Jan. 21, 2014)).

Similarly, here, the CEPA issue is not whether OSHA regulations or CDC guidelines were, in fact, violated. Rather, the issue will depend on Stepnosky's reasonable belief that such regulations or guidelines were being violated when he reported health and safety concerns to Silgan. To put it another way, CEPA is aimed at protecting whistleblowers, not at ensuring workplace safety. The focus of this action will be whether plaintiff made a complaint, and whether he was punished for it. The role of OSHA *per se* is at best subordinate; the regulations will be cited only to disallow any CEPA cause of action based on a report made in bad faith or without a reasonable belief that a violation occurred. Short of that limit, CEPA protects workers against retaliation for reports, even incorrect ones, of workplace violations.

In opposition, Defendants submit that embedded jurisdiction exists because the complaint is "replete" with allegations "related to" federal safety violations, and because Stepnosky's "fundamental grievance" is that Silgan "systematically violated federal law, which … created an unsafe work environment." (DE 7 pp.6, 7.) Defendants elsewhere attempt to frame the issue as "whether a [p]laintiff who accuses his employer of … violations of federal law … [or] obligations … can defeat federal question jurisdiction [despite] embedded … federal allegations within state law claims." (*Id.* p.12.)

Defendants contort the allegations in the complaint and the issue presented. Here, Stepnosky's grievance is neither dependent upon Silgan's systemic violations of federal law nor on the persistence of unsafe conditions at Silgan's facility. Rather, Stepnosky is suing based on Silgan's adverse action against him for complaining about health and safety concerns at the Facility (*id.* ¶¶38–45, 50–57, 60) and his co-workers'

10

resulting hostile treatment of him. (DE 1-1 ¶¶46–49)  Thus Stepnosky is not suing Silgan for actually violating federal law.  Rather, his reasonable belief that Silgan was violating federal law, at the time he reported such violations, is asserted as an element of his state-law claim under CEPA claim.  Accordingly, there is no embedded federal issue under *Grable* necessarily raised here.  Nevertheless, I will address the remaining *Grable* factors in turn.

### B. No Federal Issue Actually Disputed

The complaint raises no federal issue actually disputed by the parties. Defendants submit that "adjudicating [Stepnosky]'s claims will require the Court to resolve the parties' dispute respecting whether Silgan conducted its operations in a safe manner in accordance with OSHA regulations and CDC Guidelines."  (DE 7 p.13.)  But whether or not Silgan in fact conducted its operations safely, in compliance with OSHA regulations, or according to CDC guidelines, is far from the core of this CEPA claim. Again, what is relevant to Stepnosky's CEPA claim is his own reasonable belief.  *Dzwonar*, 177 N.J. at 462.  Accordingly, there is no federal issue actually disputed here under *Grable*.

### C. No Substantial Federal Issue

The complaint raises no federal issue that is substantial.  Courts have reasoned that "a state law complaint [that] refers to a federal statute as one of several sources of public policy does not create a substantial federal question."  *Ruiz*, 2016 WL 158522, at *3 (citing *Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 321 (3d Cir. 2010)).  The substantiality inquiry entails an assessment of the "importance of the issue to the federal system as a whole" and the "broader effects" beyond this case.  *Gunn*, 568 U.S. at 260, 264.

In opposition, Defendants argue that the references to "eleven distinct OSHA violations … in addition to allegations of CDC [g]uidance violations"

raises federal issues that are "substantial." (DE 7 p. 14.) Defendants also claim that the Court "must determine what federal workplace safety obligations are imposed upon Silgan and whether [Stepnosky]'s belief that [Silgan was committing] safety violations ... was objectively reasonable ... [t]hese issues are substantial." (*Id.* p. 15.)

It is true that, in the course of adjudicating this CEPA claim, the court will have to perform a background analysis of the alleged violations. Again, however, it must do so only so far as to assess whether Stepnosky's reports were based on a reasonable belief. That assessment in some sense involves federal law, but it does not present a substantial federal question.

Moreover, Defendants fail to address whether these issues have significance to the federal system and identify no broader effects beyond this case. For a state court to hold that Stepnosky "reasonably believed" (even if he was incorrect) that there was an OSHA violation would not constitute a binding decision of federal law or interfere with the development of OSHA jurisprudence.

*Grable* "requires more than a federal interest in ... [the] generic sense" and will not found federal jurisdiction on issues that are merely "incidental to the resolution of th[e] state law action." *Ruiz*, 2016 WL 158522, at *3. The federal issues raised here are incidental; there is no substantial issue of federal law here.

### D. The Federal-State Balance

The final *Grable* factor "is concerned with the appropriate 'balance of federal and state judicial responsibilities.'" *Gunn*, 568 U.S. at 264 (quoting *Grable*, 545 U.S. at 314). As a general matter, New Jersey has an interest "in regulating the conduct and welfare of employers and employees operating within its borders." *Salinas v. Doe*, No. 10-03244, 2010 WL 3724523, at *4 (D.N.J. Sept. 14, 2010). In the context of determining *Grable* jurisdiction, courts have reasoned that New Jersey's judiciary has a

substantial interest in deciding cases where "plaintiff's claims are based solely on state law, the domestic defendant is incorporated within the state, the Complaint alleges that at least some ... conduct occurred within this state, and no diversity jurisdiction lies."[6] *Urata v. Canare Elec. Co. Ltd.*, No. 12-05704, 2013 WL 2395049, at *13 (D.N.J. May 29, 2013). I take those factors as a guide to resolving the fourth *Grable* factor.

Stepnosky is asserting only state causes of action, Defendants' alleged conduct occurred in New Jersey, and removal was not based on diversity jurisdiction. New Jersey therefore has a substantial interest in having Stepnosky's claims decided in State Court. That interest is embodied in the CEPA statute, which is aimed, not at workplace safety, but at protecting the right of this State's workers to speak out when they reasonably perceive violations in the workplace, without fear of retaliation.

Moreover, the recognition of embedded jurisdiction here, where no substantial federal issue has been necessarily raised or disputed, would "herald a potentially enormous shift of traditionally state cases[,]" like Stepnosky's CEPA lawsuit, "into federal courts." *Grable*, 545 U.S. at 319. Under Defendants' proffer, an entire swath of state-law whistleblower cases would be funneled to the federal system, simply because the report of workplace misconduct involved violations that could be construed as federal. I have seen no authority that persuades me that either Congress or New Jersey's legislature ever envisioned such a shift in the federal-state balance. Accordingly, considerations of the federal-state balance militate against recognizing embedded jurisdiction here.

---

[6] While it is unclear whether Silgan is incorporated in New Jersey, Silgan's counterclaim alleges that it "is a Delaware corporation, duly authorized to conduct business in New Jersey, with a manufacturing plant located at 135 National Road, Edison, New Jersey." (DE 3 p.11.)

## VI. ATTORNEY'S FEES AND COSTS

Stepnosky seeks an award of its attorney's fees and costs on this remand motion, asserting that the noticed of removal lacked an objectively reasonable basis. (DE 4-2 pp.11, 12.)

In general, there is statutory authority for shifting of costs and fees: "An order remanding the case may require payment of just costs and any actual expenses, including attorney['s] fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[T]he standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 133 (2005). In *Martin,* the Supreme Court reasoned that "[a]ssessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Id.* at 140. Such costs and fees may therefore be awarded "where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. Courts have declined to exercise their discretion to award fees and costs, however, where the removal was not "frivolous" and did not "lack[] a reasonable foundation." *Ruiz*, 2016 WL 158522, at *4. Ultimately, "a district court has broad discretion and may be flexible in determining whether to require the payment of fees" and costs. *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996).

Although I am not persuaded by Defendants' arguments or positions raised in their opposition to the Motion, I will not award attorney's fees or costs. While the "reasonableness" of Defendants' grounds for removal is disputed, the *Grable* argument for federal jurisdiction involved the weighing of multiple factors, and was not so frivolous as to warrant fee-shifting. costs.

## CONCLUSION

For all the foregoing reasons, the Motion, insofar as it seeks a remand of the case to State Court, is **GRANTED**. The case shall forthwith be remanded to the Superior Court of New Jersey, Middlesex County, from which it originated. The Motion is **DENIED**, however, to the extent it seeks an award of fees and costs. The clerk shall remand the case and close the file.

Dated: July 2, 2021

/s/ Kevin McNulty

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
**Kevin McNulty
United States District Judge**